## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Barbizon School
of Modeling of Va., Inc.

v.

Barbizon Studio
of Fashion Modeling, Inc.,
and Louis J. Appignani

October 17, 1972

Case No. 4483

### By JUDGE A. CHRISTIAN COMPTON

[T]he order entered today. . . overrules the defendants' motion to dismiss.

The grounds of the motion urged by the defendants are (1) that the action is barred by the applicable statute of limitations; and (2) that the court lacks jurisdiction over the defendants since they are not subject to service of process under the Virginia Long Arm Statute. Code Sections 8-81.1 to 8-81.5.

This is a tort action of fraud and deceit which arises from a certain contract executed on behalf of the plaintiff on July 21, 1970. Deposition, p. 26. In this action filed on January 11, 1972, the plaintiff alleges that the defendants made false representations to the plaintiff's principals which induced the plaintiff to enter into the so-called "exclusive franchise agreement." The plaintiff argues (but fails distinctly to allege) that the false representations continued for "approximately seven months" (motion for judgment, paragraph

9, and deposition, pp. 48 and 59) after the execution of the contract, or until at least to February 16, 1971. (The plaintiff alleges the contract was executed on July 16, 1970, however the testimony of Mr. Coghill, as noted above, shows it was executed on July 21.) As the result of the alleged fraudulent conduct, the plaintiffs seek compensatory and punitive damages.

The first contact between the parties was initiated in November of 1969 by the witness Coghill, who "owns fifty per cent of the plaintiff's business" as does the witness White. Coghill answered an ad in the Wall Street Journal, which indicated that the defendant corporation was selling franchises for its school of "modeling and personal improvement." The contact was by mail through a letter addressed to New York City and thereafter Coghill went to New York for a meeting on December 6, 1969, with Malcolm Stewart, who represented that he was "executive director" of the defendant corporation.

Thereafter, the plaintiff asserts that negotiations continued, the detail of which is unnecessary to state at this time, and that such negotiations culminated in the execution of the contract in July of 1970. The actual signing of the agreement was apparently done on behalf of the plaintiff in Richmond and on behalf of the defendants in New York.

Prior to reaching an agreement, written memoranda had been furnished to the plaintiff, apparently showing the success of other franchise operations of the defendants, and certain like oral statements were made both in New York upon the visits there by the plaintiff's principals and over the telephone during conversations between New York and Richmond. "Pro Forma Income Projections" demonstrating anticipated net income and "quarterly comparative operating reports" showing the defendants' generally good experience had in other cities were put in the hands of the plaintiff.

Subsequent to the date in July of 1970 when the contract was signed, the plaintiff began its business in Richmond on September 13 or 14, 1970. Pursuant to paragraph 8 of the contract, a representative of the defendants selected the site of the business office and school. Deposition, p. 26. The director who was picked to operate the school was selected by a representative

of the defendants. *Ibid.*, p. 27. The defendants sent manuals to the plaintiff "to help operate the school" (paragraph 13[2] of contract) and supplied newspaper advertisements to assist the plaintiff in securing employees. *Ibid.*, p. 34. After the first director was fired, the defendants' representative again came to Richmond to "interview potential candidates for the job." *Ibid.*, p. 37.

In addition to the instructional manuals referred to herein, the evidence at the hearing on May 1, 1972, discloses that the defendants sent to Virginia "fillers for the notebooks used in instruction, sent transcripts for television commercials, and sent cosmetics to be sold in the school and to be used in demonstrations.

The plaintiff has been less than successful in the operation of its franchise and lays the blame for this at the feet of the defendants asserting misrepresentation prior to and subsequent to the execution of the contract.

### Jurisdiction

The first issue to be decided is the one of jurisdiction, that is, may this Court exercise personal jurisdiction over the defendants under the Virginia Long Arm Statute? The two defendants will be treated as one for the purpose of ruling on this motion since it has not been urged that the individual defendant's status at this stage of the proceeding is any different from that of the corporate defendant. The answer to this query is in the affirmative.

As heretofore stated in the recital of facts, the defendants agreed to and in fact have actually forwarded into Virginia instructional materials, forms of advertisements, scripts for TV commercials and cosmetics. Moreover, it (the defendant) has supplied the franchise itself, as it agreed to do. Furthermore, agents of the defendants have come to Virginia to help pick out a site for the operation of the franchise, as promised, and to help select personnel to direct the operation. Clearly, this is the "[c]ontracting to supply services or things in this State. . ." contemplated by Code § 8-81.2(a)(2). Furthermore, the cause of action sued upon here arises from the act of contracting to supply the "services and

things" aforesaid in this state, and meets the requirement of subparagraph (b) of § 8-81.2.

See the review and analysis of our statute found in the following cases from our Supreme Court involving facts which relate to other provisions of our statute: *Kolbe Inc.* v. *Chromodern, Inc.*, 211 Va. 736 (1971); *Carmichael* v. *Snyder*, 209 Va. 451 (1968); *Walke* v. *Dallas, Inc.*, 209 Va. 32 (1968). Under the facts of this case and considering the activities of these defendants as they relate to this State, "it would not offend traditional notions of fair play and substantial justice to require [them] to submit to the jurisdiction of the courts of this State." 211 Va. at 741.

Since the defendants have been properly served through the Secretary of the Commonwealth pursuant to Code § 8-81.3, the jurisdiction properly lays in this Court. In view of what has been said above, it is not necessary for the court to pass on whether the plaintiff qualifies under subparagraphs 1, 3 or 4 of § 8-81.2.

### *Limitation of Action*

The defendants urge that the one year statute of limitations applies and the action is barred since it was not filed within one year of July 21, 1970, the date of the execution of the contract. Code § 8-24. The plaintiff argues that the five year limitation of § 8-24 controls, but even if it does not, it urges that fraud which continued to at least February of 1971 has been alleged and a one year limitation does not bar the action.

The issue, of course, is twofold: first, has the plaintiff sufficiently alleged a continuing fraud? Second, if not, does the one year limitation apply? The answers to these questions are in the negative.

First, the plaintiff has failed to distinctly allege a continuing fraud, that is, fraud which has occurred subsequent to the execution of the contract. True, it has offered testimony which *may* support such allegation (and the court expresses no opinion on the sufficiency of that evidence at this stage of the case), but it has not met the standard requirement that since fraud "must be clearly proved as alleged, it must be distinctly stated." 8 M.J., *Fraud and Deceit*, § 50, pp. 738 and 739. Paragraphs

1 through 8 of the motion for judgment deal with the specifics of fraud in the inception of the contract, and the sufficiency of these allegations have not been challenged by the defendants although they use demurrer language for the individual defendant in paragraph 2 of the motion to dismiss. Paragraphs 9 and 10 of the complaint, upon which the plaintiff bases its argument that it has alleged continuing fraud, in mere general terms allude to a fraud which continued after the signing of the contract but are not sufficient as aforesaid. If the plaintiff intends to pursue this aspect of the claim, it may wish to consider an amendment to the motion for judgment.

This defect in the pleadings is not fatal to the plaintiff's case at this stage, however, since the court has concluded that the one year statute of limitations does not apply even assuming the statute of limitations began to run in July of 1970.

The plaintiff has sued for damages which it alleges resulted directly from the fraudulent representations of the defendants' agents relating to the franchise which was the subject of the contract. These alleged compensatory damages are sums expended or liability incurred in reliance upon the representations aforesaid.

Under § 8-24, if the action survives, the five year limitation applies; if it does not, the one year limitation controls. Where the damage to property for which recovery is sought is the direct result of the wrong, the action survives. The action does not survive if the damage is to the plaintiff's estate, merely personal in nature, or is the indirect result of the wrong. *Travelers Ins. Co.* v. *Turner*, 211 Va. 552, 553-554 (1971); *Carva Food Corp.* v. *Dewley*, 202 Va. 543 (1961); *Progressive Realty Corp.* v. *Meador*, 197 Va. 807 (1956); *Westover Court Corp.* v. *Eley*, 185 Va. 718 (1946) citing Judge Parker's opinion in *Barnes Coal Corporation* v. *Retail Coal Merchants Ass'n.*, 128 F.2d 645, 648-653 (4th Cir. 1942); *Trust Co.* v. *Fletcher*, 152 Va. 868 (1929); *Winston* v. *Gordon*, 115 Va. 899 (1914). Here, the damage is the direct result of the wrong; no intervening act occurred between the alleged fraud and the resulting damage. Furthermore, the damage here is not purely personal in its nature but the plaintiff has suffered damages to its "property" and business.

The defendants rely upon *Cover* v. *Critcher*, 143 Va. 357 (1925), which was an action for damages as the result of alleged misrepresentations relating to a land purchase. As the plaintiff points out, this case does not control here since in *Cover* "[t]he plaintiff's use of the property and not the property itself was affected by the act of which he complains." 143 Va. at 365. The conduct of the defendant "did not directly injure the property itself. . . ." *Ibid.* While that case and this both involve claims as the result of fraudulent misrepresentations, it is the real nature of the injury or claim which is important and not the form of the action. 211 Va. at 554.

In view of what has been said above, the five year limitation controls and this action has been filed in a timely manner.